IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHAMIA FRANLKIN, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | Civil Action No. ADC-24-00687 |
| | * | |
| DAVE, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant, Dave, Inc., moves this Court to compel Plaintiff Shamia Franklin to arbitrate her claims before the American Arbitration Association and to stay all claims against Dave, Inc. in this action until arbitration is complete. ECF No. 39. Plaintiff has responded in opposition, ECF No. 40, and Defendant has further filed a reply. ECF No. 43. After considering the motion and the responses thereto, the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, Defendant's Motion is DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of a series of transactions between Dave, Inc., and the Plaintiff. ECF No. 1 at ¶ 1. Specifically, Dave, Inc., provides consumers with cash advances via a lending app it operates, "Dave." *Id.* at ¶¶ 15-16. In the past, the app allowed users to

---

[1] On March 8, 2024, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 3. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 18.

obtain advances of up to $250, but currently allows users to obtain advances of up to $500. *Id.* at ¶¶ 17-18. Users must connect a bank account and a payment card to obtain an advance. *Id.* at ¶ 19. Dave then analyzes bank account history using proprietary underwriting criteria to determine whether a user is eligible for an advance and the amount of an advance that a user is eligible to obtain. *Id.* at ¶ 20.

Plaintiff claims that, "[i]n practice," these criteria prevent consumers from obtaining an advance unless they have a recurring source of income directly deposited into their account. *Id.* at ¶ 21. Plaintiff further claims that Dave's criteria also limit most users to amounts that are far below the $250 and $500 advertised maximum advance amount. *Id.* at ¶ 22. Dave offers both a standard advance and an expedited advance. ECF No. 1 at ¶ 23. Dave's standard advance is deposited into bank accounts within a few days, while an expedited advance is deposited into bank accounts immediately. *Id.* at ¶¶ 24-25. Consumers must pay a $1.00 fee to obtain any type of advance and must pay a $1.99-$5.99 express fee to obtain an expedited advance. *Id.* at ¶¶ 27-28. Plaintiff claims that the fees charged on Dave's advances are significant, yielding APRs in the triple digits. *Id.* at ¶ 3. These and other facts underly Plaintiff's claims against Dave, Inc., specifically for Violation of the Consumer Loan Law (Count I) and Violation of the Consumer Protection Act (Count II). *Id.* at 12-14.

Turning to the subject matter of Defendant's motion, Plaintiff Shamia Franklin created accounts with Dave on June 20, 2018, and October 7, 2019. ECF No. 40 at 2. Plaintiff downloaded the Dave app to create an account. *Id.* After opening the app, Plaintiff

encountered a welcome screen that prompted Plaintiff to click a button to create her account. *Id.*

After doing this, Franklin encountered a second screen that asked for her phone number and asked her to click a button titled "Join Dave" to continue. *Id.* Below the "Join Dave" button, a statement in smaller, gray text stated: "By joining, I agree to Dave's Privacy Policy, TOS & Electronic Communication Consent." ECF No. 39-1 at 9. The phrases "Privacy Policy", "TOS", and "Electronic Communication Consent" were hyperlinked to the corresponding terms of service. *Id.* The two welcome screens underwent changes between when Plaintiff created her accounts in 2018 and 2019. ECF No. 39-4 at ¶¶ 19-20. Both displays contained an animated bear that appears to state: "What's your number? I'll text you if your balance is at risk." *Id.* Another commonality between the displays is that the bear's message appears as black text on a white bubble that contrasts with a surrounding, teal-colored display page. *Id.*

As for differences between the two displays, the 2018 version of the display shows the phrases "Privacy Policy", "TOS", and "Electronic Communication Consent" in a gray, underlined, and slightly bolded font. ECF No. 39-4 at ¶ 19. In the 2019 display, the terms appear in a gray, underlined font with no bolding. *Id.* at ¶ 20. Additionally, the 2019 display has a more prominent "Join Dave" button, appearing in lime green, as opposed to the gray button that appeared in the 2018 display. *Id.*

The terms of service that the app directed to also changed between Plaintiff's encounters with the app in 2018 and 2019. Specifically, the 2018 terms contain an arbitration agreement on the fourth page of the five-page exhibit submitted by Defendant.

ECF No. 39-4 at 13. The header for the arbitration agreement, "CLASS ACTION AND BIDNING ARBITRATION", is capitalized, but does not differ stylistically from the other headers within the terms of service, which also covers subject matter ranging from electronic fund transfers and error resolutions. *Id.*

The arbitration agreement is more specifically denoted in Defendant's 2019 terms. At the top of the first page of the September 2019 Terms, those in place when Plaintiff created her second account, capitalized and bolded text read:

> **THIS AGREEMENT ALSO INCLUDES, AMONG OTHER THINGS, A BINDING ARBITRATION PROVISION THAT CONTAINS A CLASS ACTION WAIVER. PLEASE REFER TO SECTION 20 BELOW FOR MORE INFORMATION.**

ECF No. 39-4 at 16. The Terms require arbitration for "any past, present, or future claim, dispute, or controversy involving you . . . relating to or arising out of this Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement . . . ." *Id.* at § 20.1. A similar agreement is found in the June 2018 Terms. ECF No. 39-4 at 13.

## DISCUSSION

"The standard of review on a motion to compel arbitration under the [FAA] is 'akin to the burden on summary judgment.'" *Taccino v. Ford Motor Co.*, No. GLR-18-913, 2019 WL 1429263, at *3 (D.Md. Mar. 29, 2019) (quoting *Novic v. Midland Funding*, LLC, 271 F.Supp.3d 778, 782 (D.Md. 2017)); *see also Vinjarapu v. Gadiyaram*, No. ADC-19-3306, 2020 WL 1170613, at *3, (D.Md. Mar. 11, 2020). Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and

4

admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In determining whether a genuine issue of material fact exists, the Court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Thus, "to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Moss v. Parks Corp.*, 985 F.2d 736, 738 (4th Cir. 1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)). "In the context of a motion to compel arbitration under the FAA, 'the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support.'" *Taccino*, 2019 WL 1429263, at *3 (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)).

As it concerns the FAA, the law "provides for the enforceability of arbitration agreements and specifies procedures for conducting arbitrations and enforcing arbitration awards." *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 678 (4th Cir. 2018). Section 2 of the FAA mandates that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

irrevocable, and enforceable," with limited exceptions. 9 U.S.C. § 2 (2018). The United States Court of Appeals for the Fourth Circuit has further stated:

> application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)).

The first element is satisfied since there is a dispute between the parties. Turning to the second element, the parties dispute whether Plaintiff knowingly entered a valid agreement to arbitrate the current dispute. ECF Nos. 39-1, 40, 43. When asserting the existence of a contract, one "must demonstrate that the person alleged to be bound by the contract (1) had 'reasonable notice of an offer' to enter into the contract and (2) 'manifested' assent to it." *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 389 (4th Cir. 2024) (quoting *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024)). The real issue here is whether Plaintiff had notice that she was agreeing to arbitrate any dispute.

"In the internet context, the traditional notice inquiry focuses on 'the design and content of the relevant interface,' and asks whether it would put a 'reasonably prudent user' on notice of a contract on offer and its term." *Marshall*, 112 F.4th at 218-19 (quoting *Starke v. SquareTrade Inc.*, 913 F.3d 279, 289 (2d Cir. 2019), and *Foster v. Walmart, Inc.*, 15 F.4th 860, 864 (8th Cir. 2021)). The Fourth Circuit has recognized that this involves a

"fact-intensive inquiry" concerning the web-based agreement at issue. *Marshall*, 112 F.4th at 219 n.6 (quoting *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.,* 999 F.3d 828, 835 (2d Cir. 2021)). The Fourth Circuit has further stressed that, where it concerns web-based agreements, "the duty-to-read principle that is applicable to traditional contracts must take account of the realities of the Internet where readers reasonably do not often scroll down or follow links presented." *Naimoli*, 120 F.4th at 389. In other words, "'the duty to read does not morph into a duty to ferret out contract provisions when they are contained in inconspicuous hyperlinks,' or can be found only by scrolling down through additional screens." *Marshall*, 112 F.4th at 220 (quoting *Starke*, 913 F.3d at 295).

Defendant argues that it provided Plaintiff with notice of the arbitration agreement, and that Plaintiff further manifested assent to this agreement. ECF No. 39-1 at 13. Specifically, Defendant reasons that Plaintiff twice encountered a screen that read, "By joining I agree to Dave's Privacy Policy, TOS & Electronic Communication Consent," and that Plaintiff clicked a "Join Dave" button on that screen. *Id.* Additionally, Defendant argues that emails it sent to Plaintiff and other users contain a link to terms that include an arbitration agreement, and that these emails further put Plaintiff on actual and constructive notice of the agreement to arbitrate. ECF No. 39 at 15. Lastly, Defendant points to the fact that Plaintiff received and repaid several cash advance's using Defendant's app as evidence that Plaintiff was on notice here. *Id.*

Plaintiff argues that this evidence is insufficient to prove that Plaintiff agreed to arbitrate her claims and requests that this Court deny Defendant's motion. ECF No. 40 at 8. Specifically, Plaintiff argues that the screen that Defendant presented to Plaintiff does

not provide reasonable notice of an arbitration agreement, and that "the emails that Dave sends to users simply include a link to Dave's terms, which does not, on its own, provide reasonable notice[.]" *Id.*

After reviewing the memoranda submitted by the parties, together with the relevant evidence, this Court agrees with Plaintiff on the issue of notice here and will thus deny the Defendant's motion. Plaintiff cites to persuasive caselaw here from the Ninth Circuit, where both the District Court of Northern California and the Ninth Circuit Court of Appeals reviewed an identical arbitration agreement to one of those at issue here, concluding that the agreement was unenforceable. *See Lopez v. Dave, Inc. ("Lopez I")*, 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022); *Lopez v. Dave, Inc. ("Lopez II")*, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023).

As stated previously, this Court also recognizes that disputes involving web-based agreements like the one at issue here require a fact-intensive inquiry. *Marshall*, 112 F.4th at 219 n.6. Thus, an analysis of both the 2018 and 2019 displays that Plaintiff encountered during her use of the Dave app is necessary here. As it relates to the 2018 display, the text that calls attention to the terms of service is considerably less noticeable than the messages displayed elsewhere on the app's landing page. ECF No. 39-4 at ¶ 19. Specifically, the font appears in gray text at the bottom of the screen, in smaller font than the prompts which direct a user to specific action items, like "Enter mobile number" or "Join Dave" that appear on the same display. *Id.*

This text did not call attention to, at least explicitly, the terms of service where the Arbitration clause lie in wait. As it relates to the terms of service, the display merely refers

to "TOS" – as opposed to terms of service. ECF No. 39-4 at ¶ 19. These letters contain a hyperlink to another document where the agreement to arbitrate appears among the other terms of service. *See also Marshall*, 112 F.4th at 220 (recognizing that the duty to read principle does not require one to ferret out contract provisions referenced in inconspicuous hyperlinks).

The 2019 display encountered by the Plaintiff has the same shortcomings as the 2018 display. ECF No. 39-4 at ¶ 20. However, the 2019 display arguably falls further below the appropriate standards necessary to convey actual or inquiry notice here. Specifically, while the 2018 display did bold some references to additional terms, the 2019 display failed to do this. *Id.* at ¶ 20. Otherwise identical, the references to the terms of service, are not bolded, only underlined. *Id.* Additionally, the terms "Join Dave" appear even more prominently in the 2019 display than they do on the 2018 display. *Id.* Specifically, the 2019 display surrounds "Join Dave" prompt with a bright, lime green button. *Id.* The end result is a display that only vaguely calls attention to the relevant terms of service, especially in relation to the other prompts on the screen. *Id.* Considering the facts in the light most favorable to the Plaintiff, this Court concludes that the pages failed to provide Plaintiff with reasonable notice that she was agreeing to arbitrate any potential claims she may have against Dave.

Defendant makes several additional arguments to support its motion, citing caselaw where courts upheld similar agreements to the one at issue here. ECF No. 43 at 1. However, Plaintiff correctly counters that the cases cited by Defendant involve more conspicuous notices than those at issue in the current dispute and stand in stark contrast to the same

terms that were struck down as insufficient in both *Lopez I* and *Lopez II*. ECF No. 40 at 10-11. For example, Dave's app merely references "TOS" on the pages at issue, as opposed to bolded terms that call attention to "Terms of Service" or "Terms of Use" in a more explicit manner.

      Defendant's other arguments also fail to persuade the Court on this issue. Specifically, Defendant reasons that, in addition to the screens Plaintiff viewed as she created her account, Plaintiff also received emails from Defendant following the transaction that linked to its terms of service and the agreement to arbitrate. ECF No. 39-1 at 15. The Court finds that argument lacks any merit since the factual inquiry is at the time the Plaintiff entered into the contract – did she have notice of the arbitration language, not after the fact. Defendant further argues that that the fact Plaintiff utilized its app and repaid advances demonstrates that Plaintiff agreed to the terms of the arbitration agreement at issue here. *Id.* That argument is lacking for the same reasons.

      As to the emails sent to Plaintiff, this correspondence does not appear to be closely tied to the user's act of registration and is thus insufficient to convey reasonable notice to Plaintiff here. *See Naimoli*, 120 F.4th at 389 (recognizing that the person asserting a contract's existence must demonstrate that the person alleged to be bound must have had reasonable notice to enter the contact and manifested assent to it); *see also Edmundson v, Klarna Inc.*, 85 F.4th 695, 706 (2d Cir. 2023) (noting the importance of spatial and temporal ties between the terms of service and the user's transaction); *Starke*, 913 F.3d at 294 (same). The existence of a hyperlink alone is not sufficient to bind a consumer to a contract, *Marshall*, 112 F.4th at 220, and the correspondence referenced here appears to

10

more generally address the services that Dave provided to its customers, as opposed to calling attention to the existence of an agreement to arbitrate. ECF No. 39-4 at ¶ 10.

Turning back to the test applied in *Galloway*, the above facts demonstrate that Defendant falters at the second element here. Specifically, Defendant cannot show that the design of its interface, in either the 2018 or 2019 displays, provided Plaintiff with actual or constructive notice and that Plaintiff assented to the terms and conditions presented in the manner necessary to knowingly form a contract. *Galloway*, 819 F.3d at 84. For the reasons stated, other interactions with the Plaintiff, whether they be emails or financial transactions, also fail to show that Defendant conveyed proper notice to Plaintiff here. Elements three and four of the test from *Galloway* are not relevant here.

It follows that this Court DENIES Defendant's Motion to Compel Arbitration and Stay Proceedings.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 39) is DENIED.

Date: December 10, 2024                                /s/
                                                       A. David Copperthite
                                                       United States Magistrate Judge